**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Northern Improvement Company, et al., <br> Plaintiffs/Counterdefendants, <br> v. <br> United States of America, <br> Defendant/Counterclaimant. | No. CV-12-08011-PCT-DGC <br> **ORDER** |

Plaintiffs Northern Improvement Company ("NIC"), Alfred Jay Schritter, and Tomma Schritter filed this action against Defendant the United States to quiet title to the sand and gravel in two Arizona parcels pursuant to the Quiet Title Act, 28 U.S.C. § 2409a ("the QTA"). Doc. 12. Defendant has filed motions to dismiss for lack of subject matter jurisdiction and for summary judgment, and Plaintiffs have filed a cross-motion for summary judgment. Docs. 127,134. The motions are fully briefed. Docs. 128, 135, 136, 138, 140. Pursuant to Rule 56(f), the Court will order further briefing on the issues discussed below. *See* Fed. R. Civ. P. 56(f)(1)-(3).

**I.  Background.**

The following is the undisputed history of the two parcels at issue in this case, the Schritter Parcel and the NIC Parcel. *See* Doc. 126.[1]

---

[1] Citations to the docket are to page numbers attached to the top of each page by the Court's electronic filing system, not to page numbers in the original documents.

### A. The Schritter Parcel.

In 1923, Defendant patented the surface and mineral estates of certain federal lands, including the Schritter Parcel, to Burlington Northern Santa Fe Railway Co. ("Santa Fe").[2] *Id.* at 1. In a 1950 warranty deed, Santa Fe conveyed some of these lands, including the Schritter Parcel, to George F. Getz Jr. *Id.* at 2. This order will refer to this as the Getz Deed. The Getz Deed included two provisions through which Santa Fe reserved the mineral estate and certain rights in the property conveyed to Getz. This order will refer to the first provision as the Schritter Mineral Reservation and to the second provision as the Schritter Railroad Reservation. *See id.* at 2-3.

In a 1988 warranty deed, a successor in interest to Getz conveyed to Defendant various lands, including the same interest in the Schritter Parcel that Getz acquired with the Getz Deed. *Id.* at 3. This order will refer to this 1988 deed as the West Wing Deed. The West Wing Deed excepted "all oil, gas, coal and minerals, as reserved" in the Getz Deed. *Id.*

In an October 2003 quitclaim deed, Santa Fe conveyed to the Schritters its "right, title and interest, if any, in and to decorative rock, sand, and gravel" in the Schritter Parcel. *Id.* In a March 2004 quitclaim deed, Santa Fe conveyed to the Schritters "all Santa Fe's right, title and interest, if any" in the Schritter Parcel. *Id.*

### B. The NIC Parcel.

In 1924, Defendant patented its interest in certain federal lands, including the NIC Parcel, to Santa Fe.[3] *Id.* In a 1938 Indenture, Santa Fe conveyed these lands, including the NIC Parcel, to Willie Wall, but reserved a mineral estate. *Id.* at 4. This order will refer to this deed as the Wall Deed. Like the Getz Deed, the Wall Deed included two provisions

---

[2] The Schritter Parcel is an approximately 74.88-acre portion of land at the SW ¼ Sec. 35, T.21 N., R. 16 W., Gila & Salt River meridian, south of Hualapai Mountain Road, in Mohave County, Arizona. Doc. 126 at 1-2. The land was patented pursuant to the Act of July 27, 1988, 14 Stat. 292. *Id.* at 2.

[3] The NIC Parcel is a portion of a 398.18-acre parcel of land located in Sec. 19, T. 21 N., R. 15 W., Gila and Salt River Meridian, in Mohave County, Arizona. Doc. 126 at 3. The lands were patented pursuant to the Act of July 27, 1866, 14 Stat. 292. *Id.*

through which Santa Fe reserved the mineral estate and certain rights in the property conveyed to Wall. This order will refer to these provisions as the NIC Mineral Reservation and the NIC Railroad Reservation.

In the 1988 West Wing Deed, a successor in interest to Wall conveyed to Defendant the interest in the NIC Parcel that Wall received through the Wall Deed. *Id.* at 5. The West Wing Deed – like the Getz Deed for the Schritter Parcel – excepted "all oil, gas, coal and minerals, as reserved in" the Wall Deed with respect to the NIC Parcel. *Id.*

In 2002, Santa Fe quitclaimed to Tri-R Construction, Inc. ("Tri-R") "all of Santa Fe Pacific Railroad Company's right, title and interest, if any, in and to sand, gravel and decorative rock located within 100 feet of the surface" of land, including the NIC Parcel. *Id.* at 5. Tri-R quitclaimed that same interest in the NIC Parcel to NIC in 2004. *Id.*

### C. Deed Language.

The parties agree that no relevant differences exist between the NIC and Schritter Mineral Reservations, which this order will refer to collectively as the Mineral Reservations. *Id.* at 4. The parties also agree that no relevant differences exist between the NIC and Schritter Railroad Reservations, which the order will refer to collectively as the Railroad Reservations. *Id.* at 5.

Because the parties agree that no material differences exist in the language of the two deeds, the Court will refer only to the Getz Deed language for purposes of this order. The Getz Deed Mineral Reservation states:

> Grantor expressly reserves and excepts *all oil, gas, coal and minerals whatsoever, already found or which may hereafter be found, upon or under said lands, with the right to prospect for, mine, and remove the same* and to use so much of the surface of said lands, as shall be necessary and convenient for shafts, wells, tanks, pipe lines, rights of way, railroad tracks, storage purposes and other and different structures and purposes necessary and convenient for the digging, drilling, and working of any mines or wells which may be operated on said lands. Grantor or its successors and assigns, will pay to Grantee, or it successors or assigns of grantee, a fixed price per acre for the surface of all lands appropriated under this exception and reservation, which price shall be equal to the average price per acre paid for all the lands above described, together with the fair market value of the buildings and

permanent improvements, if any, on the land the surface of which is so appropriated. If the parties cannot agree on such fair value it shall be fixed by three appraisers, of whom each party shall appoint one and the two so appointed shall appoint the third.

Doc. 126 at 2 (emphasis added). The Getz Deed Railroad Reservation states:

This conveyance is made subject to and upon the condition that in the event that Grantor, or its successors or assigns, or The Atchison, Topeka and Santa Fe Railway Company, or its successors or assigns, or any railway company at least a majority of whose stock it owns, may at any time hereafter desire to construct across the premises hereinabove described, any railroad tracks, telegraph and telephone lines, or other electric wire lines, oil or water pipe lines, roadways, ditches, flumes or aqueducts, or to operate on said premises gravel and ballast pits and quarries and take material therefrom for railroad purposes, the right of way for any such tracks, telegraph, telephone or other electric wire lines, pipelines, roadways, ditches, flumes and aqueducts, of sufficient width for the proper protection, maintenance and operation thereof, and the land necessary and convenient for the operation of such gravel and ballast pits and quarries and the taking of material therefrom for railroad purposes, may be appropriated by any such Company desiring to construct such tracks, wire lines, pipelines, roadways, ditches, flumes or aqueducts, or to operate such gravel and ballast pits and quarries, upon such Company paying or offering to pay Grantee, or the legal representatives, heirs, successors or assigns of Grantee, a fixed price per acre for all the land above described, together with the fair value of all buildings and permanent improvements constructed upon the land so appropriated; and Grantee, or their legal representatives, heirs, successors or assigns or Grantee, will convey to such Company such appropriated right of way upon demand and tender of payment as aforesaid.

*Id.* at 2-3.

**II.    Title to Sand and Gravel on the Schritter and NIC Parcels.**

The Court has not yet ruled on Defendant's motion to dismiss for lack of subject matter jurisdiction, but for purposes of this order the Court will assume that jurisdiction exists and will therefore discuss the merits of Plaintiffs' action. The Court also has not ruled on Defendant's affirmative defenses.

Rule 56(f) provides that "[a]fter giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." Fed. R. Civ. P. 56(f)(1)-(3). The Court is considering granting summary judgment in favor of Plaintiffs based on an unasserted argument. This order sets out the Court's current analysis of the issues and applicable law, and gives the parties an opportunity to respond to this possible basis for judgment.

**A. Arizona Deed Interpretation Standard.**

State law governs the "transfer of property[] and defines the rights of its owners." *See Oregon State Land Bd. v. Corvallis Sand & Gravel Bo.*, 429 U.S. 363, 378 (1977). Following the parties' lead, the Court will apply Arizona law. Arizona courts "apply rules of contract interpretation to the interpretation of deeds, and [the] primary goal is to give effect to the intent of the parties." *Campos v. Campos*, No. 2 CA-CV 2013-0139, 2014 WL 2159348, at *2 (Ariz. Ct. App. May 22, 2014) (citing *Scalia v. Green*, 271 P.3d 479, 483 (Ariz. Ct. App. 2011); *Taylor v. State Farm Mut. Auto. Ins. Co.*, 854 P.2d 1134, 1139 (Ariz. 1993) (primary purpose is to determine and enforce intent of parties at time contract made)); *see also Spurlock*, 694 P.2d at 304.

"To determine intent, [courts] look first to the plain meaning of the words in the context of the deed as a whole." *Campos*, 2014 WL 2159348, at *2. "When a deed is unambiguous, the intent of the parties must be discerned from the four corners of the document." *Scalia*, 271 P.3d at 483 (citing *Spurlock*, 694 P.2d at 304). But ambiguity need not exist before courts may consider extrinsic evidence of the parties' intent. *See Taylor*, 854 P.2d at 1140. Courts "also may consider extrinsic evidence of intent if the deed is reasonably susceptible to the interpretation suggested by the proponent of that evidence." *Campos*, 2014 WL 2159348, at *2 (citing *Long v. City of Glendale*, 93 P.3d 519, 528 (Ariz. Ct. App. 2004) (if "writing is 'reasonably susceptible' to the interpretation

suggested by the proponent of the extrinsic evidence then the court should admit the extrinsic evidence" of the parties' intent); *Taylor*, 854 P.2d at 1140).

## B. Parties' Arguments.

Defendant argues that it holds title to the sand and gravel in or on the Schritter and NIC Parcels for two reasons: (1) under Arizona law, the deed language is clear that the surface estate owner holds title to sand and gravel; and (2) if not, the extrinsic evidence establishes the parties' intent in Defendant's favor. Docs. 127 at 13, 15.

Regarding its first argument, Defendant concedes that if the Getz and Wall Deeds had "no specific railroad reservation mentioning sand and gravel . . . then sand and gravel would come within the general mineral reservations." Doc. 138 at 12. Defendant argues that the inclusion of the Railroad Reservations, which "specifically identify[] sand and gravel . . . conclusively demonstrates an intent that such materials are not included in the General Mineral Reservations." Doc. 127 at 15. Defendant cites three cases as support, *Spurlock v. Santa Fe Pacific R.R. Co.*, 694 P.2d 299 (Ariz. Ct. App. Oct. 18, 1984*)*, *U.S. Power Systems, Inc. v. Red Mountain Mining, Inc.*, CA-CV 98-0415 (Ariz. Ct. App. Apr. 22, 1999), and *State Land Department v. Tucson Rock & Sand, Co.*, 481 P.2d 867, 869 (Ariz. 1971). Defendant concludes from these cases that "all commercially valuable substances separate form the soil fall under the general mineral reservation as a matter of law, except substances that are specifically mentioned in another reservation or if another provision of the deed shows a specific intent to limit the general reservation." Doc. 127 at 13-15.

Plaintiffs cross-move, asserting that their mineral estates include title to the sand and gravel. They rebut Defendant's interpretation of these cases but do not argue that, under Arizona law, the plain language of the deeds conclusively establishes that the mineral estate owner holds title to the sand and gravel. Rather, Plaintiffs' arguments focus on evidence in the record that purportedly proves this intent. *See* Doc. 134 at 11-18.

### C. Discussion of Applicable Law.

In *Tucson Rock & Sand*, Defendant's first cited case, the issue was "[w]hether sand, rock and gravel [were] minerals, so as to be subject to a mineral lease" under a certain Arizona statute. *Tucson Rock & Sand*, 481 P.2d at 869. The Arizona Supreme Court held that the statute at issue controlled the disposition of sand, rock, and gravel on state lands. *Id.* at 871. The court stated that because the "word 'mineral' [was] used in so many senses, dependent upon the context," ordinary dictionary definitions provided little help, and "the word [was] susceptible to limitation or expansion according to the intention with which it [was] used in the particular instrument or statute." *Id.* at 869 (citations omitted).

In *Spurlock*, the plaintiff surface estate owner sued Santa Fe to quiet title to the sand and gravel on the property at issue. The parties also disputed the rights to helium, nitrogen, potash, petrified wood, and industrial clay on the land. *Spurlock*, 694 P.2d at 303. The principal issue before the Arizona Court of Appeals was whether "a deed reservation of 'all oil, gas, coal and minerals whatsoever, already found or which may hereafter be found, upon or under said lands'" included helium, nitrogen, potash, petrified wood, and industrial clay. *Id.* at 304. The court discussed other jurisdictions' approaches to similar mineral reservations and definitions of the term mineral, and concluded that the best approach was "to treat the term minerals as unambiguous." *Id.* at 304-08. The court stated that a reservation of "all minerals whatsoever" reflected the parties' general intent to "sever the surface estate from the underlying mineral estate" and "create two distinct, co-existing, and individually valuable estates." *Id.* at 308-09 (citations omitted). The grantor "retain[ed] ownership of all commercially valuable substances separate from the soil," including unknown mineral substances, and the grantee owned the surface for its use and enjoyment. *Id.* (citations omitted). The court held that the term minerals "as used in [the] reservation" was unambiguous and included helium, nitrogen, potash, wood, and clay. The deed contained no specific intent to limit the reservation, and "contrary extrinsic evidence of intent [was not] admissible to vary its effectiveness." *Id.* at 311.

As to the sand and gravel, Santa Fe asserted ownership at trial not through the mineral reservations, but through the "nonexclusive right to take gravel and ballast for railroad purposes pursuant to a different provision contained in the deeds to [plaintiff] Spurlock's predecessors in title." *Id.* at 303. But Santa Fe did not appeal the trial court's finding that it "abandoned any right it may have had to take sand and gravel for railroad purposes." *Id.* at 311. The Court of Appeals noted that Santa Fe claimed title to the sand a gravel through the reservation permitting it to take them for "railroad purposes," not through the mineral reservation, and that the court's discussion concerning the general mineral reservation therefore was not applicable to the sand and gravel. *Id.*

The Arizona Court of Appeals decided *U.S. Power Systems* in an unpublished memorandum decision. *See U.S. Power Systems*, CA-CV 98-0415 (Ariz. Ct. App. Apr. 22, 1999) at Doc. 128-7 at 31-37.[4] U.S. Power was Santa Fe's successor in interest to a mineral estate and sued Red Mountain to enjoin the removal of sand and gravel from the land. *Id.* at *7-*8. The relevant deed contained a mineral reservation and a reservation for railroad use nearly identical to language in the Getz and Wall Deeds, and both parties cited *Spurlock*. *Id.* at *6-*8. The court reiterated *Spurlock*'s rule that the mineral estate owner owns "all commercially valuable substances separate from the soil," but stated that *Spurlock*'s general rule did "not supersede the universal rule that the court must give effect to the clear intent of the parties." *Id.* at *9, *11. The court referenced a gravel reservation clause elsewhere in the deed, and found that if the parties "intended to include gravel as a reserved mineral, there would have been no need to give the grantor a specific right to use gravel under a separate clause." *Id.* at *11. The court held that the gravel reservation "conclusively expresse[d] the parties' intention with respect to sand and gravel" as part of Red Mountain's surface estate, consistent with *Spurlock*'s holding regarding a similar clause. *Id.*

---

[4] The Court could not locate the case in Westlaw and will cite to the page numbers at the bottom of the decision as it appears in the record as Defendant's exhibit. *See* Doc. 128-7 at 31-37.

- 8 -

*Tucson Rock & Sand* seems to generally support a case-by-case approach to the parties' intent regarding the definition of minerals. And Arizona courts have instructed as a general rule that the primary goal of deed interpretation is to give effect to the parties' intent. *See Campos*, 2014 WL 2159348 at *2 (citing cases); *Taylor*, 854 P.2d at 1139. But in *Tucson Rock & Sand*, the Arizona Supreme Court was required to interpret and harmonize a statutory scheme that implicated the leasing of state lands and federal law, not the language of a deed with the type of provisions at issue here. The Supreme Court was not presented with the issue of whether a railroad reservation narrows a mineral estate owner's rights to sand and gravel – a right it would otherwise hold under a general mineral reservation. *See Spurlock*, 694 P.2d at 306 (noting that two prior Arizona Court of Appeals decisions were factually distinguishable and not helpful, citing *Tucson Rock & Sand*). Moreover, Defendant concedes that, absent the Railroad Reservations, the Mineral Reservations would entitle Plaintiffs to the sand and gravel. Thus, whether sand and gravel constitute "minerals" under the Mineral Reservations does not answer whether the Railroad Reservations reflect the parties' intent to include sand and gravel in the surface estate.

Nor did the Arizona Court of Appeals' decision in *Spurlock* decide the question here. Santa Fe waived on appeal the issue of whether a railroad reservation narrows a mineral estate holder's rights to sand and gravel where a deed also contains a general mineral reservation. Santa Fe did not appeal the lower court's ruling in favor of the surface estate owner, and the Court of Appeals' statements regarding the interaction of the mineral and railroad reservations in that case were dictum. Defendant overreads *Spurlock* to hold per se that when "substances [] are specifically mentioned in another reservation," a general mineral reservation excludes those substances. *See* Doc. 127 at 14-15. Defendant's reading is based on the Court of Appeals' statements on an issue not appealed or argued. What is clear from *Spurlock*, however, is this: absent "specific intent to limit [the] reservation . . . within other provisions of the deed[]," a reservation of "all minerals whatsoever" reflects a general intent by the parties to separate the surface and mineral

estates, granting to the mineral estate "all commercially valuable substances separate from the soil." *Id.* at 478, 481.

Defendant relies heavily on *U.S. Power Systems*. Doc. 127 at 13-15. But as an unpublished memorandum decision, *U.S. Power Systems* is not a precedential interpretation of Arizona law. *See* Ariz. Sup. Ct. R. 111. Moreover, the court in *U.S. Power Systems* found that the parties intended to exclude sand and gravel from the general mineral reservation because another clause granted the right to use gravel. The court did not hold that reference to sand and gravel in other provisions always demonstrates an intent to narrow rights secured in a general mineral reservation. And as discussed below, the Court at this point finds no such intent in the Railroad Reservations of the Getz and Wall Deeds.

### D. Analysis of the Getz and Wall Deed Language.

As noted, Defendant concedes that, absent the Railroad Reservations, Plaintiffs hold title to the sand and gravel on the Schritter and NIC Parcels pursuit to the Mineral Reservations. Doc. 138 at 12. The sole issue, therefore, is whether the Railroad Reservations demonstrate the parties' intent to narrow the scope of rights granted in the Mineral Reservations.

Defendant asserts that the deeds "specifically provided for sand and gravel in the Railroad Reservations." Doc. 127 at 14. The Court does not agree. In part, the Railroad Reservations state that the Grantor,

> "or The Atchison, Topeka and Santa Fe Railway Company, . . . or any railway company at least a majority of whose stock it owns, may at any time hereafter desire to construct across [the Schritter and NIC Parcels], any railroad tracks, telegraph and telephone lines, or other electric wire lines, oil or water pipe lines, roadways, ditches, flumes or aqueducts, or to operate on said premises *gravel and ballast pits and quarries and take material therefrom for railroad purposes*, [and] the right of way for [the items listed above], maintenance and operation thereof, and the land necessary and convenient for the operation of such gravel and ballast pits . . . may be appropriated by any such Company desiring to [construct these items], [and the Company will pay Grantee] *a fixed price per acre for all the land above*

*described, together with the fair value of all buildings and permanent improvements constructed upon the land so appropriated.*"

Doc. 126 at 2-3 (emphasis added).

The Court reads this language to mean that Santa Fe reserved its right to engage in various railroad operations on the conveyed land, such as placing railroad tracks, installing pipelines, digging ditches, or operating gravel and ballast pits and quarries "for railroad purposes." If Santa Fe chose to engage in these railroad activities, the Railroad Reservation provided that "the land necessary and convenient for" those activities "may be appropriated" by Santa Fe, provided Santa Fe paid a fixed price per acre for all land thus appropriated plus the fair value of any improvements on the land. In effect, the Railroad Reservation granted the railroad a right to interfere with the conveyed surface estate in the future, for railroad purposes and for a price. Its intent was not to grant the railroad all rights to sand and gravel on the property. The reference to "gravel and ballast pits" was merely one in a list of possible railroad purposes to which the surface estate could be subjected. Defendant's isolation of the words "gravel and ballast" misses the provision's purpose.

This reading is supported by the fact that the Railroad Reservation refers to "gravel and ballast" rather than sand and gravel. Ballast, in this context, is the crushed rock and gravel used to construct the bed of a railroad track. *See* Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/ballast ("gravel or broken stone laid in a railroad bed"). The reference is to a specific material needed for railroad operations.

In sum, the Court finds that the Railroad Reservation is plain and not reasonably susceptible to Defendant's reading. If true, then extrinsic evidence cannot be considered in support of that reading. *Campos*, 2014 WL 2159348, at *2; *Long*, 93 P.3d at 528. Absent success on Defendant's collateral estoppel and waiver defenses, the Court would grant summary judgment in favor of Plaintiffs on this basis.

Because Plaintiffs did not move for summary judgment on this ground, the parties are directed, pursuant to Rule 56(f), to file memoranda no longer than 10 pages that (1) respond to the Court's analysis of the Railroad Reservations language; (2) respond to

the Court's analysis of the *Tucson Sand & Rock*, *Spurlock*, and *U.S. Power Systems* decisions, identifying any other persuasive Arizona authority; and (3) identify any other issues or flaws with the Court's reasoning.

**IT IS ORDERED** that the parties shall file the memoranda called for above by May 10, 2019.

Dated this 19th day of April, 2019.

David G. Campbell
Senior United States District Judge